May it please the Court, I'm Matt Adams with Northwest Immigrant Rights Project. On behalf of Mr. Lanuza, I'll seek to preserve five minutes for rebuttal. This case presents the issue of whether a federal officer of the United States, an attorney for the Department of Homeland Security, may be held accountable, individually liable, for egregious constitutional violations when, acting with impunity, forged a government document that he then submitted to the Immigration Court in order to strip Mr. Lanuza of his opportunity to apply for lawful status to remain here with his family. Judge Peckman agreed that a Bivens remedy should be available, but ultimately concluded this Court's opinion in Mermetti forecloses such a possibility. The District Court understood Mermetti as creating a very broad rule as to a very broad context, barring Bivens' actions to simply deportation proceedings, to any constitutional violations in deportations proceedings. Now this is despite the fact that in Mermetti the Court cautioned that it must conduct its analysis by going through a narrow gate and avoiding a high level of generality. And in fact, the Court's decision from the get-go focused, the very first line of the to challenge detention while in deportation proceedings. And again, this was stated repeatedly throughout the decision, confining its analysis to that important fact, detention while in deportation proceedings. To the extent there is any uncertainty over the confines of the context that was presented in Mermetti, I believe that the Supreme Court's decision in Abbasi has now made clear that the Courts must be very specific as to context. And in particular, one of the factors the Court relied on in Abbasi was the constitutional amendment that was alleged to have been violated as a factor in distinguishing between separate contexts. And therefore, in Abbasi, the Court remanded the second claim, the prisoner abuse claim against the warden because it was based on the Fifth Amendment as opposed to the Eighth Amendment. Similarly, here, Mr. Lanusa brings a Fifth Amendment claim. It's not based upon the Fourth Amendment as was the detention claim in Mermetti. But even more important, the substantive issue that was discussed in Mermetti was detention. And it was critical to the analysis because the claim for unlawful detention was never vindicated. And in fact, the statute provides the Attorney General with discretion to detain individuals throughout deportation proceedings, regardless of the charges, and regardless of whether they're likely to ultimately prevail. So while the Attorney General has broad discretion in detaining individuals in deportation proceedings, and there is absolutely no discretion for an immigration officer ever to fabricate evidence to submit to the Court, unlike Mermetti, here there is a readily apparent answer. There's a bright line to be drawn, barring federal officers from engaging in conduct that eviscerates the integrity of these proceedings. So counsel, let me stop you right there. Because it seems to me for you to prevail in this case, the narrower you can describe what you're trying to achieve, the better. There'd be a broad sweeping language the Supreme Court wants us to tamp down on. So can you give us the narrowest key to victory for you in this case? The more narrow you can define it, the more likely, as I read Abbasi, that you have a shot. So how, you know, instead of just saying integrity of proceedings, because that can mean a lot of things, give me something really specific that we can use to run through Abbasi. The context that is presented here, I would argue, is a Fifth Amendment violation of due process where a federal officer has fabricated evidence, or some similar type of fraud that he's performed upon the Court, to strip the individual of a fair hearing. So you're seeking then it would be intentional. That's right. Not negligence, not, you know, in hindsight could have done it better. You're saying in this case, when we know this case, the guy pled guilty to it. But intentional fraud, essentially. That is certainly the context that's presented here. And I think in other cases they would have to define whether, in Bivens' case law, it's the clearly incompetent or the willful violation. And this case doesn't present the clearly incompetent. Counsel, I agree with Judge Owens that this has to be, if you're going to prevail at all, it has to be very narrowly defined. But in this case, I think there's something more than just an intentional fraud or forgery of a document. In this case, he fabricated a document that completely defeated a valid claim for relief that this petitioner had. And to me, that's what's so egregious about this, was the only way that she could not prevail was that continuous residence. And he fabricated a claim that showed that continuous residence was disrupted. So he shut down her whole case by forging a document, which is pretty egregious behavior. Well, we agree. And in our briefing, we discussed that the evidence that was fabricated was done for the purpose of preventing access to the benefit that the Immigration and Nationality Act provides. And I think that is a key factor. And it also goes to what the defendant has most steadily relied on in trying to confront this claim. And that is the argument that the Immigration and Nationality Act presents an alternative remedy. But as Judge Wardlaw stated, the constitutional violation was performed to prevent our client from accessing the benefits that are available under the Immigration and Nationality Act. There is no mechanism in the Immigration and Nationality Act for an individual to even file a complaint regarding such misconduct. Counsel, in terms of sort of the entire remedial scheme, I mean, the Supreme Court acknowledges in Abbasi that a crucial consideration in deciding whether there should be a claim for deterring wrongdoing by the officers. I mean, here you have a situation where Mr. Love was prosecuted criminally, found guilty, also paid about $12,000 in restitution. Isn't that highly relevant to the Bivens analysis that the court is supposed to do, that those kind of remedies were forthcoming in this process? In addition to the relief that he got through the immigration process itself. With respect, I disagree for a couple of reasons. First of all, in this case, as was made clear by the record, there was not even an investigation initiated until he filed his damages claim. So even though two years previously his attorney had submitted the evidence to the Board of Immigration Appeals of the forged document, and the Board of Immigration Appeals, recognizing that, had reopened his case, and then his case had been sent back to the immigration judge. Neither the Board of Immigration Appeals, the immigration judge, or anyone else in the Department of Justice initiated any type of investigation. The defendant was left to sweep his misconduct under the carpet until Mr. Lanusa filed this damages claim two years later. And moreover, it is true that any time you have a willful violation of constitutional rights, that they're theoretically subject to criminal prosecution. It would vitiate any Bivens remedy to say that the fact that criminal prosecution is available is sufficient to demonstrate an alternative remedy. And I think a great example of that is the case that was before the Supreme Court this summer in Hernandez, where you had a border patrol agent who was alleged to have shot an unarmed and unthreatening boy in the face. Clearly, potential grounds for criminal prosecution are available there. But the court did not point to that as an alternative remedy or mention that as a special factor. And in fact, in the Fifth Circuit's panel decision, they explicitly rejected the contention that the potential of criminal liability was sufficient to avoid a Bivens remedy. And there's another point I would make. Counselor, I have another question related to that. If there were a Bivens remedy, what would you be seeking damages to compensate? Like what types of injury? Because apparently the $12,000 was meant to compensate for the attorney's fees spent in the first proceeding. Yes, and the $12,000 provided compensation for some of the attorney's fees. It only compensated him for the fees up through 2012, which is a little funny of a marker given that he had to then go on for two more years of immigration proceedings. But in addition, Mr. Lanous and his family suffered direct threat of deportation that was hanging over their head without the opportunity to present the application for relief for which normally they would have been entitled to apply, to seek. And so for almost four years, this young family had the imminent threat of separation looming over their shoulder. And all the while knowing that they were being deprived of the opportunity, the one opportunity they had to remain together here in the United States. So to be more brief, additional attorney's fees that were not covered and the substantial emotional harm that the family suffered for going through this process. How would you quantify that out of curiosity? Because there is a period of time, and were there U.S. children involved? That's right, there's two U.S. citizen children. So it's a real risk of family separation plus the uncertainty of the deportation plus they have an order of removal, I guess, against them. How do you quantify, I know you could quantify the attorney's fees, but how do you quantify all those other things? Well, I think that's where we'd want the opportunity to go back before the district court and present the evidence of the psychological evaluation that had been performed, especially with respect to his wife and the damages that they suffered due to that emotional distress. I mean, there's always, in every case that we bring, certain amount of difficulties of saying what's the appropriate amount, and we bring comparisons of other cases and show, you know, benchmarks of what courts have previously signed off as being an appropriate amount of damages.  But nonetheless, we are able to move forward, and we hope that Mr. Lanouse will have that opportunity to present that evidence to the court. Counsel, what is your best argument for the proposition that, because I think this is what Abbasi asked us to look at, for the proposition that Congress would want the courts to conclude that Congress would want the courts to recognize that there is, there should be, a cause of action here to redress this constitutional violation, as you see it. It's not whether we think, in light of these egregious facts, that there should be a damages remedy. I think we have to make the judgment that Congress would want us to recognize. What's your best argument for that proposition? Our best authority is the language of Congress itself in Section 1357G7, where Congress acknowledges that damages are available for violations of officers when they're enforcing immigration laws. In 8 U.F.C. 1357G7 and 8, Congress makes reference to the damages actions that are available against federal enforcement officers and says those state officers who enroll in this federal immigration enforcement program may be subject to the same level of liability and immunity. And so instead of the Immigration and Nationality Act evidencing, through its silence or through an alternative remedy, congressional intent to preempt a damages action, you have the statutory language itself explicitly making reference to alternative damages actions. Now, the defendant argues that that provision is too subtle or should only be understood as an indemnification clause. But there's no authority for that position. In fact, it's counter to the plain language of the statute. And I would just read the second subsection, 1357G8, which explicitly makes clear that the reference is, quote, for purposes of determining the liability and immunity from suit, end quote. And in the subsection before that, it references the Federal Tort Claims Act. Again, a waiver of immunity for federal officials allowing them to be sued. And I think what's even more notable is that in the amicus brief for the United States, they don't even bother to address it. Instead, they plunge forward saying the silence as to damages demonstrate congressional intent that there should be no Bivens or damages remedy. But again, this ignores the fact that Congress has acknowledged that damages are available for those who violate the immigration enforcement laws. So instead of legislation demonstrating congressional intent to preempt damages, you have legislation demonstrating that it should be available. And then... What does subsection 6 mean? The Attorney General may not accept a service under the subsection if the service will be used to displace any federal employee. What does that mean? What are they talking about? That's the whole scheme laying out the program for the federal government to train and certify state officers to enforce federal laws. So section 6 is saying this should not be used in order to avoid hiring federal officers. And then section 7 and 8 says for those state officers who do go through this program and are certified and cooperate in enforcing federal immigration laws, they are going to be held liable to the extent that federal officers are liable under the Federal Tort Claims Act and then for other constitutional, both state and federal laws. So there's an explicit reference, which I think puts us in a very different realm than, for example, Abbasi, where they talked about congressional silence in the aftermath of September 11th and saying Congress clearly should have known that there's those seeking damages and made no reference to that. And if you go through the other factors, I think it's... I realize I want to preserve some time here, but Judge Peckman found that those same factors do not counsel hesitation because the concerns here are so disconnected from national security, from foreign relations, they're disconnected from any concern about imposing upon the discretion of the government how it's going to prosecute its immigration cases. It's the distinct case where the line is clear, there's a bright line to be drawn, and that is why in Abbasi they emphasize that Bivens is for deterrence. And this is what we have, the single officer engaging in egregious overreach. So if there's no further questions, I'll preserve my time. Thank you very much. Good morning. May it please the Court. My name is Amanda Lee, and I'm representing Jonathan Love, the defendant appellee in this matter. Your sympathies may be with Mr. Lanuza, but the law is not. What Jonathan Love did was unethical, immoral, and criminal, but that does not mean that Mr. Lanuza has a damages remedy under Bivens against Mr. Love in this case. The district court correctly applied the authority of both this court in Marmetti and its analysis aligns well with the Supreme Court's reasoning  finding that there was no implied right of action under Bivens for Mr. Lanuza because he was an alien in deportation proceedings, the exact language that was used in the Marmetti court. In your view then, could an officer of the United States government ever be liable for anything under Bivens if it has to do with immigration? If it falls under the scope of an alien's removal procedures that are available to an alien under the Immigration and Nationality Act, our position would be that there's no action available. So I'm going to give you a very extreme example. If he said, look, you have a 15-year-old daughter, let me have sex with your 15-year-old daughter, and then maybe I can work on the paperwork a little bit. On your view, no Bivens action there? For our view, that is not a basis for a Bivens action. It's clearly a basis for criminal prosecution and for the other consequences that were imposed upon Mr. Love. Loss of his job, loss of his license to practice law, and $12,000 in restitution. On the restitution amount, I want to note for the court that Mr. Lanuza was represented by counsel at the time Mr. Love was sentenced. Mr. Lanuza appeared in court at the sentencing. He made no objection to the amount of restitution that was being ordered by the court. That amount was agreed to by the parties in the case. I wasn't representing Mr. Love in the criminal case, so I can't claim to know what those conversations were. I can tell you based on my experience as a federal criminal defense lawyer that in my experience the government would not agree to an amount for restitution if the victim was not on board with that number. Obviously this is a little odd here because the government on the one hand, I'm using big G, big G government on the one hand is supposed to be advocating for these people, but today they're at the table advocating against them. I don't think we can put too much in the government's basket here when he's sitting at your side of the table and not theirs. He's the prosecutor at the U.S. Attorney's Office. So my point is that the restitution amount would have been discussed with counsel for Mr. Lanuza or with whatever advocate was assisting him, and that unless this was an extraordinarily unusual situation, Mr. Lanuza's wishes about the restitution amount would have been taken into consideration. Getting back to my question, and I use the extreme facts, because I understand in the Supreme Court in Abbasi is that things that government decisions about policy or how things are carried out are one thing, but here this seems to be such a personal affront attack on another person that I don't see how it would impair the government's function in the immigration context to tell someone if you intentionally falsify documents, there are consequences for that. There are legal consequences. There are civil consequences for doing that. How would that upend our immigration system? Well, I think that what the Supreme Court is telling us in Abbasi is that what they've been hinting at for 30 years now is what they mean, which is that those are decisions for Congress to make, not decisions for the court to make. Congress has had many, many opportunities to amend the Immigration and Nationality Act, the Naturalization Act, to allow private remedies against federal officers. They could have expanded... Excuse me, counsel. I guess I have a concern about... I mean, I think we're supposed to presume that officers of the court are going to act truthfully and uphold their duties under the law. I don't know if Congress would ever even have contemplated this sort of situation to presume that officers of the court in immigration proceedings would fabricate documents or behave unethically. So it doesn't seem to me that this is the sort of thing... When Congress enacts laws in the area of immigration, as we've seen, it talks about who can come in, who gets deported, what other forms of relief there may be, the refugee law, but they're not contemplating necessarily all the procedures. In fact, we find most of the procedures relating to this in the CFR is where we find them relating to hearings. So how do you respond to that? Well, one way I respond to that is by asking the court to consider situations outside of immigration law and what we see happening in courtrooms done by officers of the court. All the time, we have seen decades now of criminal convictions being reversed, five, ten, twenty years after the fact, very often with findings that prosecutors engaged in witness tampering, withholding exculpatory evidence that they knew they had to provide, falsifying evidence, and Congress has not... I think Congress is perfectly aware of what's happening in that context and hasn't changed the law for them either. But there are civil damages, we just saw in a case, this whole morning has been about civil damages for violations of the Fourth, Fifth, and Sixth Amendment. Right, and if it falls under the Federal Tort Claims Act or Section 1983, then the plaintiff has those remedies. If it does not, and Congress hasn't decided to expand the law to provide them in a case like this, then the alien does not have those remedies. So then it's your position that, and I think we found cases from the First, Second, Fifth, and Seventh Circuits that all involved intentional misconduct by government officials, not negligent, intentional. That after Abassi, those are all wrong? I think that what happens after Abassi, after the decision in Abassi and Hernandez, is that cases that represent contexts other than the original three Bivens cases are now open to question. It's going to be for the courts to decide whether each individual new context fits in that very narrow door that the Supreme Court has left open. Counsel, you're not suggesting that if a case does not fit within one of those three Bivens contexts, that the court cannot consider expanding the Bivens principle to that new context. You're not suggesting that, right? I'm not saying that. I'm not saying that at all, Your Honor. I'm just saying that cases that lower courts, courts of appeal, have decided previously recognizing Bivens rights outside the context of the three original cases might now be called into question in new cases. That the courts may have to step through this analysis that's been set forth in Abassi about really determining whether there are special factors that counsel hesitation and determining... I'm trying to understand what those special factors are that would counsel hesitation. As Judge Owens has pointed out, there's no way that national security concerns are implicated here, foreign policy determinations. We're not dealing with lawsuits against the attorney general or high executive officials. This seems to be a very unusual case where there's no discretionary act involved. The culpability is absolutely clear. So what are the counterfact... What should counsel caution here? I think what should counsel caution here is that all this, this seems to be... is a particularly egregious set of facts. What the court is being asked to decide is whether an entire new context under Bivens should be recognized for purposes of damages claims. Why can't... Again, returning to Judge Owens' original question, why can't that context be very narrowly described in terms of the unusual and egregious facts of Bivens in terms of this case? The context doesn't have to be suddenly anything in the deportation realm is fair ground. That would be an insupportable decision. I understand that, Your Honor. However, if the context is described as a Bivens remedy may be available in cases where an alien is in removal proceedings and alleges that a federal officer, someone, either the INS prosecutor, if you will, or someone else working on the case has violated her rights, then that case is going to move forward... Well, no, we'd be much more specific than that. I don't think they're alleging a violation of the rights. They're saying this guy, your client, knowingly falsified documents. I mean, I'm assuming that... I would like to think that's not a common everyday occurrence, so I think we can keep this pretty narrow, can't we? I've never heard of another case like this before. And so I want to make sure I understand the question. So, Your Honor, you're saying that you would define the context as a federal officer knowingly falsifies a document... Falsifies a court record. Falsifies a court record in a case involving deportation proceedings. Right. What I'm saying is that, one, there is a governmental interest in limiting the expenditure of its resources on claims that turn out not to be well-founded. And I don't necessarily agree that by defining it so narrowly, you will limit the number of claims. You will limit the number of successful claims, but you will not be eliminating the litigation. But, I mean, I've never heard of a case like this before. You know, so Bivens has been around for a long time, and I could not find any cases this specific. I mean, yes, there are cases involving Brady violations and things like that. But, I mean, I've never heard of a government officer actually falsifying, in this country at least, a government officer falsifying a document in an immigration context to get someone thrown out of the country. I've just never heard of that before. I did not find a case in the immigration context. There are cases in the Section 1983 context outside of immigration, and those are predominantly criminal actions. Right. I also want to... May I just add something? This also troubles me, too, about your argument. It's the Hernandez v. Mesa case. It's a per curiam opinion by the Supreme Court. And what it did is lay down the principles that the Court of Appeals is supposed to consider, and then it remanded to the Court of Appeals to decide it. So, it left open the possibility that there would be a Bivens claim for damages under the very specific factual scenario in Hernandez v. Mesa. So, why isn't that similar to this... Why isn't that not similar to this case? Well, the facts in Hernandez v. Mesa are different, first of all. Well, I know what the facts are. So, we all know what the facts are. But I think the court in that case also alludes to the overall context in which immigration matters arise, talking about the way that border area is between the fences. And we are not arguing that there could never be a Bivens remedy in a case involving immigration. We are arguing that this is not a case that should be accorded a Bivens remedy. One thing that I think has been... Well, one thing that I do not agree with my opponent about is the notion that national security is not implicated in these cases. Congress has, you know, taken over the universe of immigration, the issues of guarding our borders, determining who can come in and who can come out. And I don't see that there's some clear, fine line that you can draw between, oh, this alien's entry implicates a particular national security concern, but this other one doesn't. I think that would be a very, very difficult... I'm sorry, but in this case, the government agent thwarted what Congress enacted by his actions. He did thwart what Congress enacted. And it's also true that the remedies built into the immigration, the INA, provided Mr. Lanuza an avenue for challenging what had occurred. There is a way to file a petition to reopen your case, and that's exactly what he did, and he was granted relief. But that doesn't erase the four years of the threat of deportation and separation of the family and all the things that he went through. And it seemed to have been just luck that he got this new attorney that noticed this document was not in use in the year 2000. I mean, I don't think we have a very intelligent person you're representing either if the document he forged wasn't even available in 2000. Right. It certainly has made me wonder whether Mr. Lanuza would have had a claim for ineffective assistance of counsel or malpractice, frankly, a damages remedy and malpractice against his prior lawyers. As between the INA and ICE versus an alien petitioner, who is better charged with knowing whether a document is forged or not? I do not disagree with you, Your Honor, about that. I think that one of the keys to remember in these situations is that the purpose of a Bivens remedy is deterrence. And if a federal officer is not going to be deterred by criminal prosecution, loss of his law license and loss of his job, then I don't know what is going to deter him or her. I don't think that it's damages that's going to do it. No. I think, though, if, I mean, you can look at it, though, as not only does this kind of invoke the criminal justice system, but by doing what he did, he also damaged an individual personally and having to pay for that and compensate that person for damages, I think is an additional incentive. No, you can't just be in your little world of ICE and DHS and all of this and do wrongdoing and not suffer the full consequences of the damage that you invoked. Yes. As to damages, in addition to the point I made earlier about the $12,000 being an agreed amount for restitution for legal fees that were the consequence of Mr. Love's action, I think the other thing to remember is if this case is remanded, one of the things the court would have to do is determine exactly how you calculate those damages. And part of that is, well, how long would the proceeding have been if the document had not been introduced and there had been a hearing? The burden would have been on Mr. Lanuza to demonstrate not only the continuous residence, but also the hardship to family members. At the time of the first hearing, he had been married for three days and did not have any biological children. Right. And we can worry about that, in fact, what happens. But what I'm getting at is it's not clear that the damages that were paid to him in terms of the restitution are insufficient. Sure. Can I ask you one other question about the Federal Tort Claims Act? Is there a limitation on damages in the FTCA? There's no punitive damages under the FTCA, is my understanding. I don't know of another limitation. We had another question over here. Thank you. Just very quickly, is it your assumption that if there was to be a remand that liability is beyond question and only damages would be at issue? We seem to have spoken only about a damages determination. I mean, there is, well, I'm asking you, is there still a liability issue to be addressed below at a trial? I'm thinking about that, Your Honor. If the court finds that a Bivens remedy could be appropriate, I believe that the District Court would, I don't know if there's another argument to raise in terms of liability. Okay. I'm sorry, Your Honor. Thank you. I appreciate that. Thank you. Have I gone over time? You have, but that's why we gave you a hard cap, so he still has his time. Thank you. Otherwise, you'd have 32 seconds. You can have five minutes. Thank you. Thank you, counsel. Thank you, Your Honor. May it please the court, Thomas Byron from the Justice Department here on behalf of the United States as amicus curiae. I think we made clear in our amicus brief that the government here does not represent Mr. Love. In fact, the United States separately in this district prosecuted him successfully, and he was sentenced to pretty significant consequences for his misconduct. There's no doubt as well that his misconduct was reprehensible, and we do not in any way defend it. The question here, though, is quite different. The question here is whether Congress might doubt, to use the language of Abbasi, the efficacy or necessity of a damages remedy to redress this particular interest of the plaintiff. And looking at that, first, there's no question, there's no dispute that this is a new context. Both parties agree about that. I think there's been no questions about that. So then the question becomes, are there special factors counseling hesitation before extending the Bivens remedy to this context? And what Abbasi said in the prior Supreme Court decisions made clear as well is that the court has to look at the category of cases that would be implicated not merely at the particular dispute between one plaintiff and one defendant to determine whether those special factors counsel hesitation, and in other words, whether Congress might doubt whether a damages remedy is appropriate. Here, those categorical considerations require the court to look beyond the particular egregious misconduct here. And I would say that the kinds of allegations that the plaintiff here has made are not unusual, even though it is unusual for the defendant to have actually been convicted and sentenced for the misconduct. So looking at Mermetti itself, the plaintiff in Mermetti actually relied on allegations that the defendants there lied about a document that was submitted to support detention in that case, and that they lied about a corroborating witness. Those kinds of allegations are not unusual in Bivens cases. And categorically, the court has to recognize that the kinds of cases that would be permitted if this case were to go forward conceivably would include those kinds of allegations as well. In looking at how Mermetti approached this, which I think Abbasi confirmed, was the right way, the first question to ask is whether Congress has paid attention to create a comprehensive statutory scheme. And the court in Mermetti recognized that the INA is just such a scheme. It accommodates the concerns. It protects the interests of plaintiffs. The fact that it doesn't provide a damages remedy is not a shortcoming. It's actually an indication that Congress in its many and repeated amendments of this statute has not seen fit to do so. Judge Wardlaw, you asked earlier whether we should conclude that Congress would not have contemplated this particular problem. But I think, again, looking categorically, Congress did contemplate the need to address the procedures in immigration court and the need for review of the decisions of an immigration judge. So, here, the BIA granted the motion to reopen, which is the very mechanism Congress provided and directed the immigration judge to consider seriously the grave allegations of misconduct at issue here. Even apart from the INA and its comprehensive statutory scheme, which, like the CSRS, the civil service remedies in Bush and like the social security disability comprehensive, complex, administrative scheme at issue in Chiliki, Schweiker against Chiliki, like those two, the fact that there's no damages remedy is not an impediment to concluding that special factors counsel hesitation before extending Bivens here. And, in fact, the court in Wilkie explained that there's no doubt that government officials may overreach, but the question the court has to face is whether a Bivens remedy, whether the Bivens cure, as the court put it, is worse than the disease. And that reflects the categorical concern in the conclusion that Abbasi and Mermetti have both reached that Congress is better suited to weigh the costs and benefits of determining whether a damages remedy against individual federal officials is the appropriate mechanism to determine her misconduct. Counsel, isn't the logic of your argument that although the Supreme Court chose not to overrule the Bivens cases, did not say there shall be no expansion of Bivens, that, in effect, with all their cautionary language, that's really what they've done? I mean, it seems to me the logic of your argument is that there simply is no justification for recognizing a Bivens claim in a new context. Well, Judge Lopez, I think you're right that the court in Abbasi used extraordinarily strong language cautioning the courts to respect the role of Congress and to respect the separation of powers and the limited role of the judiciary. Now, in doing so, the court did recognize that it's conceivable that in some cases extension to a new context could be an appropriate exercise of the judicial function. But I think you're right to note that the cautionary language in Abbasi demonstrates that the court thought that that would be extraordinary and it would represent, in most circumstances, an encroachment on the legislative power to make those determinations, as the court put it, about the impact on government operations system-wide. And that's the concern about categorically opening up a wide range of cases. Well, Kassam, what is your definition of the category into which this case falls? Judge Whittle, I think that's really the tricky question. And so, I think some of the questions that you raised and Judge Owens raised earlier reflect this concern about, is there some way to craft a narrow category? And I would caution that I think it would be difficult to do so for the reason that I mentioned that these kinds of allegations about lying, relying on documents improperly, that these allegations are not that unusual, in fact, even though I think you're right, Judge Whittle and Judge Owens, that the actual misconduct here is quite unusual. So, thinking about the category of cases that might be brought within an extension of Bivens, if the court were to permit this case to go forward, it's, I think it's important to recognize that mere allegations should not suffice that if there were some way to craft a narrow category that it would be important to recognize, for example, that here, and again, I think this is tricky because it's not categorical, it really is unique to the particular dispute in this case, but here, a federal district court actually sentenced, accepted a guilty plea and sentenced this individual for the misconduct at issue. That does potentially... Maybe it's the guilty plea itself. I don't know that that's right, Judge Wardlaw, it may be, but again, I'm very nervous about talking about the particular circumstances here, whereas the category of cases is conceivably going to be broader because the plaintiffs in a variety of cases are going to be able to make allegations. Indeed, the plaintiff here made these allegations before the guilty plea had been entered, before the charges had even been brought. See, that's part of the deterrence argument on the other side. To be sure, Your Honor. The government didn't do anything to... The government, which should know, right, should know when it's receiving a forged document, didn't do anything about it until this lawsuit was brought. Well, actually, to be clear, Your Honor, I don't think it's accurate to say before this lawsuit was brought. I think plaintiff's counsel correctly pointed out that he filed a damages claim, an administrative claim under the FTCA. Okay. And remember, that prompt, to the extent that it was a prompt, and I have actually inquired about this, the timeline does suggest that there was some overlap there, but it's also not clear   One thing we do know is that the investigation by the Office of Professional Responsibility at ICE started after the immigration case was brought. So, I don't think that the immigration court proceedings had ended, and I don't want to speculate too much about why that timing might have resulted, but it does make some sense to allow those proceedings to play out first, before sort of intruding even at a prosecutorial level about what's going to happen. So, let me just go back, though, to the point I was talking about a moment ago. I do want you to wrap up fairly soon, because we're way over. Of course, Judge Owens, I apologize. So, if I can just say that I want to emphasize again the proper focus needs to be on a category of cases that's judicially administrable, and that that's some of the concern that underlies the court's decisions in cases like Wilkie, for example, in particular, not on the particular egregiousness of the defendant's conduct in any particular dispute. If the court has no further questions, we'd urge that the judgment be affirmed. Thank you, Your Honor. All right, so, for rebuttal, I'm actually going to give you a hard 10, but then we're done, okay? Ten minutes. I would like to start out by addressing some of these specific points. We filed a motion for judicial notice where we found that the guilty plea that was entered in paragraph 6R, it says, quote, the fraudulent I-826 came to the attention of  authorities on or about February 13th, 2014, when IL filed an administrative claim under the Federal Torts Claims Act. That does not leave any room for the government to argue that they might have been doing some machinations in the background or waiting around for proceedings to be concluded before initiating an investigation. The federal government warned the Department of Justice at three different points that there was indisputably a forged document submitted to the court. When petitioner's counsel first filed his motion for immigration appeals, which, of course, the Board of Immigration Appeals recognized the claims and reopened, and then when they remanded it to the immigration judge, at no time was any action taken. Are you suggesting that the category that we might recognize here can appropriately be defined by the particular facts of this case, which include a plea of guilty, a conviction of guilt with respect to the charge of creating a fraudulent document? Are you suggesting the category be defined that narrowly? No. And for this reason, as counsel for the government stated, our claim preceded any criminal investigation. If we had to wait for a guilty plea, the government would have succeeded on the first of their five motions to dismiss that they filed against this federal torts claimed act. Because, of course, it took the government another year after this investigation moving forward to reach this settlement. Well, aren't you now acknowledging what the government just said, that allegations of the kind of conduct that's been raised here, that that is enough to make a good Bivens claim? I think the Supreme Court has put in enough safeguards in cases like Iqbal saying that the allegations have to be very specific. You know, one of the primary points of the Supreme Court's decision in Abbasi is that the court must be very specific in looking at the facts of the case, the rank of the officer, if there's any special factors in play. So even if you had a context that targets in a future case from saying pursuant to Abbasi, we can also show  this new case, there are special factors. This case does, in fact, deal with a very sensitive investigation with a confidential informant with allegations of terrorism such as was the case in Abbasi, where an individual, a federal officer of the United States, has submitted a fraudulent document to the court and in doing so taken away, stripped the individual of their opportunity to proceed forward with their immigration application or with that fair hearing. And as I think the judge's questions to opposing counsel made clear, the Supreme Court, in remanding one of the claims in Abbasi and the other claim in Hernandez, made clear that Bivens is not forever precluded. Yes, undoubtedly, the court must exercise great caution in extending Bivens to a new context, but it is equally true that Bivens remains available for a new novel context. The court refined the test laid out in Wilkie with its special factors analysis in Abbasi saying these are the factors we look to to see if there is anything that counsel's hesitation. And again, it's notable that the United States, when they got up here to present their case, skipped any  special factors. And that does demonstrate congressional awareness of the fact that damages remedy should be available for violations of these immigration laws. But they have no response for that. And when we look at the special factors that were laid out in Abbasi, what was the Supreme Court  that said there should be individual instances of discrimination or law enforcement overreach, end quote. That's precisely what we have here. In contrast to Abbasi, here we have an individual and egregious violation of discrimination of law enforcement over national security. But it is clear from the record there is no tie to national security here. And in Abbasi himself, the court made clear that, and I'll just read this one sentence, quote, national security concerns must not become a talisman used to ward off discrimination   over national security. The Supreme Court has a right to a remedy when a federal officer of the United States fabricates evidence in order to strip them of their only opportunity to move forward with their application to remain with their family here in the United States. And one last point. The defendant says, oh, well, there was an agreement as to the restitution amount. Well, that agreement was between the United States and the defendant. I was there with our plaintiff, and we were not asked to provide our signature or sign off on any amount. And in fact, when the U.S. Attorney's Office called our office and explained it, I asked about the other specific fees, objective fees, like the legal expenses that have been incurred, and it was explained that, you know, this has been agreed upon, and we think at this point it's a fair resolution of the matter. So Mr. Lanusa was not a party to that process. And as we stated before, any time a person willfully violates another person's constitutional rights, they could be criminally liable. It's not enough to say, oh, there might be criminal liability here. Instead, as the courts, sorry. I was going to ask a question. So I was just briefly looking back at Bivens itself, because the Supreme Court seems to indicate that it doesn't want to go way beyond Bivens' factual situation. And I do think that there is some similarity in that the conduct by the Bivens officers was intentional and knowing. They knew that they did not have probable cause to search this house. Does that help you here? I think it does. In fact, if you make the analogy in Bivens, it was of no use to the defendant that the criminal proceedings had been dismissed. That's similar to the defendant arguing there was a motion to reopen and he got back into the removal proceedings. But as the court said in Bivens, quote, assuming Bivens' innocence of the crime charged, the exclusionary rule is irrelevant, end quote. And similar in this case, assuming that that document was false, it provides no remedy to our situation where he should have been in the first place. His right to apply for cancellation exists independent of Mr. Love's violation of constitutional rights. He sought to apply for that even before Mr. Love performed those acts. Counsel, what is your answer to the question whether there has to be a trial on liability if there is a remand? I believe that Judge Peckman has already gone through and found that the factors don't counsel hesitation and that there otherwise would be liability. Judge Peckman   if there is a trial on liability in this area, then the case should be remanded for a determination of damages. This case is not seeking a remedy for every violation or any routine violation of process in the immigration court proceedings. It's a very specific context. But Bivens is there in order to deter future actions to make sure this type of action does not become routine or ordinary. There is no reason that Mr. Lanusa do not suffer without recourse. And we would ask this court pursuant to the instructions of Abbasian and recognizing that there is no special factors counseling hesitation to allow him to   you very much.
judges: Lipez, Wardlaw, Owens